UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WEIDERT,<br><br>    Petitioner,<br><br>v.<br><br>MARION SPEARMAN,<br><br>    Respondent. | Case No. 11-cv-00564-JST<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: ECF No. 1 |

    Petitioner David Weidert filed this petition for a writ of habeas corpus, challenging proceedings before the Board of Parole Hearings. The case has been stayed for several years pending the Ninth Circuit's decisions in similar cases raising the same claims as those Mr. Weidert makes here. The stay having now expired, and the Court having considered the Ninth Circuit's recent decisions, the Court will deny the petition.

**I.     BACKGROUND**

    A jury convicted Weidert of one count of first degree murder and one count of kidnapping in Fresno County Superior Court in or around 1980. ECF No. 1 ("Pet.") at 11 & Ex. A; see also People v. Weidert, 39 Cal. 3d 836 (1985). According to the California Supreme Court's decision in Weidert's direct appeal, which is quoted in Weidert's petition, the conviction stems from a burglary of the office of Dr. David Joseph Edwards in 1980. Id. at 12. Dr. Edwards "undertook his own investigation and focused upon the employees of the janitorial service he had engaged," which included Weidert and another individual, Michael Morganti. Id. (citing People v. Weidert, 49 Cal. 3d at 840-41). Morganti later confessed to acting as lookout while Weidert burglarized the office, and pleaded guilty to petty theft. Id.

    Upon learning of Morganti's confession, Weidert "became very angry," and "belted out" that "'nobody is going to believe that idiot in Court. Nobody's going to believe him. I'll see to it

that they don't.'" Id.  In late 1980, shortly after Weidert's 18th birthday, Weidert and another individual, John A., drove to Morganti's neighborhood. Id. at 13.  John A. convinced Morganti to leave the apartment and walk to the parking lot where Weidert was waiting. Id.  The two "then drove to an isolated location in the mountains where appellant, aided by John, beat Morganti and left him for dead in a shallow grave." Id.  Morganti died of suffocation. Id.  Weidert was sentenced to a term of 25 years-to-life with the possibility of parole and entered custody on December 7, 1981. Pet. at 11.  He became eligible for parole on August 29, 1996. Id.

Weidert filed the instant habeas petition on February 7, 2011, in which he brought two challenges to the Board of Parole Hearings' ("BPH") determination on February 25, 2009, that Weidert is unsuitable for parole. Id. at 8.  That petition followed an initial habeas petition in the Fresno County Superior Court in 2009, followed by subsequent petitions to the California Court of Appeal and the California Supreme Court in 2010. Id. at 9.

Weidert's first challenge is based on the argument that the BPH's decision finding him unsuitable for parole violated his federal right to due process because it "was reached without record evidence demonstrating that his parole would pose a current '*unreasonable* risk of danger' to public safety." Pet. at 8 (emphasis in original).  The Court dismissed this claim on March 29, 2011, finding that Weidert received at least the minimum amount of due process required by the Constitution. See ECF No. 2 at 2.

Weidert's second challenge is based on the argument that the application of Proposition 9 to his eligibility for parole violated his federal constitutional protections against ex post facto laws, because it effectively increased the length of his incarceration.[1]  Pet. at 37.  Prior to the enactment of Proposition 9, which also is known as Marsy's Law, parole hearings following an initial denial of parole had to be convened within one year of the denial unless the Board found that it was unreasonable to expect that parole could be granted the following year. Cal. Penal Code § 3041.5(b)(2) (2008).  Proposition 9 modified this time period and authorizes the deferral of a subsequent parole hearing for a period up to fifteen years. Cal. Penal Code § 3041.5(b)(3) (2009).

---

[1] Proposition 9 amended California Penal Code Section 3041.5(b)(3) in 2008.

1  The shortest interval the Board may set between hearings is three years, and it may do so based on
2  a finding that the prisoner "does not require a more lengthy period of incarceration . . . than seven
3  additional years." Id. Weidert argues that this "change in the law 'creates a substantial risk of
4  increasing his punishment' . . . [and] therefore violate[s] his state and federal constitutional
5  protections against *ex post facto* laws." Pet. at 37 (quoting Garner v. Jones, 529 U.S. 244, 256
6  (2000)) (emphasis in petition).

7  On March 29, 2011, the Court held that Weidert's ex post facto claim is cognizable and
8  required Respondent to file an answer to the petition. See ECF No. 2.  Respondent filed an answer
9  and moved to dismiss the ex post facto claim. ECF No. 3.  The Court denied the motion to dismiss
10 on August 8, 2011, and stayed the action pending the California Supreme Court's resolution of In
11 re Vicks, 295 P.3d 863 (Cal. 2013), a case in which a prisoner challenged the application of
12 Proposition 9 to the parole process.  ECF No. 6.  The Court lifted the stay on March 12, 2013,
13 after the California Supreme Court ruled in favor of the state in In re Vicks.  See ECF Nos. 9, 10.
14 Respondent then filed an answer to Weidert's remaining ex post facto claim.  ECF No. 11.

15 On February 10, 2014, the Court stayed this action sua sponte in light of pending
16 proceedings in Burnight v. Swarthout, No. 11-16062 (9th Cir. Apr. 27, 2011), noting that that case
17 raised many of the same issues as Respondent's petition. ECF No. 12.  On June 23, 2015, the
18 parties notified the Court that Burnight had been dismissed, but proposed that the case should
19 remain stayed in light of the Ninth Circuit's then-forthcoming decision in Gilman v. Brown, Nos.
20 14-15613 and 14-15680, which was likely to address the same ex post facto claim brought by
21 Weidert. ECF No. 14.  The Court granted the parties' request. ECF No. 15.  The stay was later
22 extended in light of en banc proceedings in Gilman.  ECF No. 19.

23 Lastly, on June 23, 2016, Respondent filed its supplemental response in this Court, relying
24 on the Ninth Circuit's decision in favor of the government in Gilman v. Brown, 814 F.3d 1007,
25 1021 (9th Cir. 2015). ECF No. 20.  No reply was filed.

26 **II.     LEGAL STANDARD**

27 This Court may entertain a petition for a writ of habeas corpus "on behalf of a person in
28 custody pursuant to the judgment of a State court only on the ground that he is in custody in

3

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended section 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the [United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Section 2254(d)(1) restricts the source of clearly established law to the United States Supreme Court's decisions. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003).

### III.   DISCUSSION

Petitioner's remaining claim in this case is that Proposition 9 violates "federal

4

1   constitutional protections against *ex post facto* laws" by "increas[ing] the minimum parole period
2   denial period [*sic*] from one year, the limit at the time of his conviction in 1979, to three years."
3   Pet. at 37.  He contends that this change "has indisputably disadvantaged Petitioner and creates a
4   'substantial risk of increasing his punishment.'"  Id. (quoting Garner v. Jones, 529 U.S. 244, 256
5   (2000)).

6       This argument was unsuccessful before the state superior court.  That court noted that
7   while Proposition 8 "did result in an increase in the minimum time period between parole
8   hearings," this "did not change petitioner's sentence in any way, and his sentence remains 25 years
9   to life."  ECF No. 1-8 at 5.

> Even before the amendment to Penal Code section 3041.5, the Board could have denied petitioner's parole for a period of up to five years, and in fact it has previously issued five-year denials to petitioner.  Petitioner does not contend that any of the prior denials constituted an ex post facto increase in his sentence.  Obviously, any denial of parole, whether it is for one year, three years, five years, or an even greater period, will result in petitioner spending more time in prison than if his parole had been granted.  However, this does not mean that every time the Board exercises its discretion to deny parole it is also re-sentencing the prisoner to a longer prison term.  Because petitioner has been sentenced to a life term, his sentence is indeterminate and any denial of parole will result in a longer period of custody.  The fact that the law now mandates a minimum three-year denial rather than a one-year minimum does not mean that petitioner's sentence has been increased after the fact.

Id.  Because both the California Court of Appeal and California Supreme Court denied Petitioner's petition without comment, this constitutes the last reasoned decision of the state court.  Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991) ("We look through the subsequent unexplained denials to that opinion, unless respondent has carried his burden of adducing strong evidence that one of the subsequent courts reached the merits of the federal claim.").

   As noted, this same issue has been resolved by the Ninth Circuit in two recent decisions, Gilman v. Schwarzenegger ("Gilman I"), 638 F.3d 1101 (9th Cir. 2011), and Gilman v. Brown ("Gilman II"), 814 F.3d 1007 (9th Cir. 2016).  In Gilman I, eight California prisoners contended, as Petitioner does here, that Proposition 9's modification of the periods between parole hearings violated the *Ex Post Facto* Clause of the United States Constitution.  638 F.3d at 1103.  The Ninth Circuit reversed the district court's grant of a preliminary injunction on that issue.  Id.  Citing to Garner, it noted that the plaintiffs, to succeed on their claim, must show either "(1) Proposition 9,

1  on its face, created a significant risk of increasing the punishment of California life-term inmates,
2  or (2) Plaintiffs can 'demonstrate, by evidence drawn from [Proposition 9's] practical
3  implementation . . ., that its retroactive application will result in a longer period of incarceration
4  than under the [prior law].'" Gilman I, 638 F.3d at 1106 (quoting Garner, 529 U.S. at 255).  The
5  Ninth Circuit also noted that both Garner and Morales involved statutory changes to the periods
6  between parole proceedings.  Id. at 1106-07.  In those cases, as here, the Supreme Court rejected
7  the ex post facto challenges, holding that "the decrease in the frequency of parole hearings
8  'create[d] only the most speculative and attenuated possibility of producing the prohibited effect
9  of increasing the measure of punishment for covered crimes.'" Id. at 1106 (quoting Morales, 514
10 U.S. at 509).  The court further held that "[e]ven assuming, without deciding, that the statutory
11 changes decreasing the frequency of scheduled hearings would create a risk of prolonged
12 incarceration," Proposition 9 was not an ex post facto law because it allowed the parole board, in
13 its discretion, to advance a parole hearing, and "an advance hearing by the Board 'would remove
14 any possibility of harm' to prisoners because they would not be required to wait a minimum of
15 three years for a hearing." Id. at 1109 (quoting California Dep't of Corr. v. Morales, 514 U.S. 499,
16 513 (1995)).

17    Similarly, in Gilman II, the Ninth Circuit reversed the district court's judgment in favor of
18 plaintiffs and imposition of injunctive relief.  814 F.3d at 1010.  Having already held that
19 Proposition 9 did not on its face create a "significant risk" of increasing punishment for prisoners,
20 the Ninth Circuit held that plaintiffs also failed to show the change's "practical implementation"
21 would result in longer incarcerations.  Id. at 1016-1017.

22    These decisions fully resolve Petitioner's claims.  While Petitioner contends that
23 Proposition 9 unconstitutionally increases his punishment under Garner, the Ninth Circuit has
24 explicitly held otherwise.  Accordingly, the state court did not act unreasonably in denying
25 Petitioner's habeas claim.  See Stevenson v. Asuncion, No. CV 16-1826-MWF(AJW), 2016 WL
26 4154946, at *3 (C.D. Cal. June 24, 2016) (denying similar habeas claim based upon the Gilman
27 / / /
28 / / /

decisions), report and recommendation adopted, No. CV 16-1826 MWF (AJW), 2016 WL 4180947 (C.D. Cal. Aug. 4, 2016).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied.

IT IS SO ORDERED.

Dated:  October 11, 2016

_____
JON S. TIGAR
United States District Judge